IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISON

| | | |
|---|---|---|
| ISAIAH S. HARRIS SR. | ) | Case No.1:26-cv-00718-SL |
| | ) | |
| Petitioner, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | REUBEN J. SHEPERD |
| ANGELA STUFF, WARDEN | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Respondent. | ) | |

## I.      Introduction

Petitioner Isaiah S. Harris ("Harris") filed a pro se habeas corpus petition ("Petition") on March 9, 2026,[1] pursuant to 28 U.S.C. § 2254, regarding his 2009 convictions for rape, two counts of aggravated burglary, intimidation, two counts of domestic violence, and two counts of violating a protection order or consent agreement. (ECF Doc. 1). This matter was referred to me for the preparation of a Report and Recommendation. (ECF Doc. 4). Respondent Warden Angela Stuff ("Respondent") filed a motion to transfer venue to the Sixth Circuit Court of Appeals on May 20, 2026, because Harris' Petition is second or successive, (ECF Doc. 9), which Harris opposed (ECF Doc. 10). For the reasons given below, I recommend that Respondent's motion to transfer be granted.

---

[1] Federal district courts apply the prison mailbox rule, accepting filings as of the date placed in the prison mail system. *See Houston v. Lack*, 487 U.S. 266, 270 (1988).

## II.    Factual Background

The Ohio Ninth District Court of Appeals summarized the facts of Harris' convictions as follows:

{¶ 2} Mr. Harris started dating K.T. when they were 16 years old. They have three children together. According to K.T., they were living together on March 26, 2008, when they had an argument and she told him to leave. She said that he punched her and, after she was on the ground, kicked her in the head. She suffered a busted lip and bruising around her nose. According to Mr. Harris, he was dating another woman at the time. He said that he, K.T., and the new girlfriend met that day and that K.T. was injured when the two women began fighting. He said that K.T. blamed him for her injuries because she was angry that he was with someone else. The Grand Jury indicted him for domestic violence and felonious assault.

{¶ 3} Following that incident, a municipal court judge issued a temporary protection order, prohibiting Mr. Harris from committing acts of abuse against K.T. According to K.T., however, on June 30, 2008, Mr. Harris came to her house and began arguing with her about her having lied to him about a trip she had taken with a friend. During the argument, he punched, choked, and kicked her. He also swung a hammer around declaring that he was going to "bash [her] brains in with it." According to Mr. Harris, K.T. came over to his apartment that day and got into a fight with another woman he was dating. The Grand Jury indicted him for domestic violence and violating a protection order. After the incident, the municipal court issued another temporary protection order, prohibiting Mr. Harris from coming near K.T. or having any contact with her.

{¶ 4} K.T. said that, on November 12, 2008, Mr. Harris called her and told her that he wanted to see her. Because she was about to go to bed, she told him no and hung up. A few minutes later, he kicked open the door of her house. She met him on the staircase, and they went downstairs together to the living room. According to K.T., he pressed the blade of a pocket knife against her face and made her perform fellatio on him. After it was over, he told her that, if they could not be together, then they might as well just kill each other. He refused to leave at first because he thought she would again report what had happened to the police. He also told her that, if he found out that she had been seeing anyone else, he would kill her. According to Mr. Harris, he did not go to K.T.'s house that day. He alleged that she had fabricated her entire story. The Grand Jury indicted him for kidnapping, rape, aggravated burglary, intimidation, domestic violence, and violating a protection order.

{¶ 5} Mr. Harris waived his right to a jury trial and moved to have the cases tried together. Regarding the March 2008 incident, the trial court found him guilty of domestic violence. Regarding the June 2008 incident, it found him guilty of domestic violence and violating a protection order. Regarding the November 2008 incident, it found him guilty of rape, aggravated burglary, intimidation, domestic violence, and violating a protection order.

2

*State v. Harris*, Nos. 09CA009605, 09CA009606, 09CA009607, 2010 WL 1016085, at

*1-2 (Ohio Ct. App. Mar. 22, 2010). These factual findings are presumed correct unless

Harris rebuts this presumption by clear and convincing evidence. *See* 28 U.S.C.

§ 2254(e)(1).

### III.        Procedural History[2]

#### A.        State Court Indictments and Convictions

In 2008, Harris was indicted by three Lorain County Grand Juries. (*Harris v.*

*Clipper*, No. 1:14-CV-00846, ECF Doc. 7-3, 7-5, 7-7). In April of that year, the first

grand jury charged Harris with one count of felonious assault under Ohio Revised Code

("O.R.C.") § 2903.11(A)(1) and one count of domestic violence under O.R.C.

§ 2919.25(A) in connection to the events of March 26, 2008. (*Id.* at ECF Doc. 7-3). This

was assigned case number 08-CR0000075721 ("Case One"). (*Id.*). In July, the second

grand jury charged Harris with one count of domestic violence under O.R.C.

§ 2919.25(A) and one count of violating a protection order or consent agreement under

O.R.C. § 2919.27(A)(1) in connection to the events of June 30, 2008. (*Id.* at ECF Doc. 7-

5). This was assigned case number 08-CR0000076357 ("Case Two"). (*Id.*). Finally, in

October, the third grand jury charged Harris with one count of kidnapping under O.R.C.

§ 2905.01(A)(4), one count of rape under O.R.C. § 2907.02(A)(2), two counts of

---

[2] When determining a motion to dismiss, a court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Brent v. Wayne County Dep't of Human Services*, 901 F.3d 656, 694 (6th Cir. 2018). Here, Respondent has premised their motion to transfer on Harris' prior habeas and alleges that his present petition is second or successive to that petition. However, Respondent has not submitted a Return of Writ or state court record. Therefore, I determine it is proper to reference the procedural history contained in his prior federal habeas petition. *See Ghaster v. City of Rocky River*, 913 F. Supp. 2d 443, 454-55 (N.D. Ohio 2012) (a court may take judicial notice of another court's docket).

aggravated burglary under O.R.C. § 2911.11(A)(1) and O.R.C. § 2911.11(A)(2), one count of intimidation under O.R.C. § 2921.03(A), one count of domestic violence under O.R.C. § 2919.25(A), and one count of violating protection order or consent agreement under O.R.C. § 2919.27(A)(1) in connection to the events of November 13, 2008. (*Id.* at ECF Doc. 7-7). This was assigned case number 08-CR0000077230 ("Case Three"). (*Id.*) The three cases were consolidated into one bench trial on May 14, 2009. (*Id.* at ECF Doc. 7-2, 7-4, 7-6, 7-10).

At a verdict and sentencing hearing on May 20, 2009, Harris was convicted of domestic violence in Case One. (*Id.* at ECF Doc. 7-10, p. 167). In Case Two, Harris was convicted of domestic violence and violating a protection order or consent agreement. (*Id.* at pp. 168-69). Finally, in Case Three, Harris was convicted of rape, both counts of aggravated burglary, intimidation, domestic violence, and violating a protection order or consent agreement. (*Id.*). Harris received 18-month prison terms in Cases One and Two and a 20 1/2-year prison term in Case Three, all three sentences were ordered to be served consecutively. (*Id.* at p. 170). The judge also imposed a mandatory post-release control ("PRC") term of five years in Case Three. (*Id.*) ("Upon your release you will be placed on 5 years mandatory post-release control."). In aggregate, Harris was sentenced to 23 1/2 in prison followed by 5 years of mandatory PRC upon his release. (*Id.*).

The sentencing journal entries, dated May 20, 2009, reflected the prison terms as announced at the sentencing hearing, but imposed optional PRC "up to a maximum of 3 years" in Cases One and Two and a mandatory PRC "up to a maximum of 5 years" in Case Three. (*Id.* at ECF Doc. 7-8, 7-9, 7-10). It also ordered Harris to serve "any term of post release control imposed by the Parole Board, and any prison term for violation of

that post release control." (*Id.* at ECF Doc. 7-10, pp. 1-4). On December 1, 2009, the sentencing judge amended the PRC term in Case Three's sentencing journal *nunc pro tunc*, striking "up to a maximum of" and rendering the sentence as follows: "The court has further notified the defendant that post conviction[3] control is mandatory for 5 years[.]"[4] (*Id.* at ECF Doc. 7-10, pp. 7-12). The order to serve "any term" of PRC and "any prison term" for violating PRC remained. (*Id.*).

### B.      Direct Appeals and First Federal Habeas Corpus Petition

Harris, through new counsel, directly appealed all three convictions to the Court of Appeals for the Ninth Appellate District on June 17, 2009. (*Id.* at ECF Doc. 7-12, 7-16, 7-18). The three cases were consolidated on September 25, 2009. (*Id.* at ECF Doc. 7-13, 7-15, 7-17). Harris asserted the following assignment of error:

> The verdict in this case is against the sufficiency and manifest weight of the evidence and should be reversed because it violates the Fifth, Sixth, and Fourteenth amendments to the United States Constitution, and Article I, Section 10 of the Constitution of the State of Ohio.

(*Id.* at ECF Doc. 7-18, p. 4).

The Ninth District affirmed Harris' convictions on March 22, 2010. *State v. Harris*, 2010-Ohio-1081 (Ohio Ct. App., Mar. 22, 2010).

Harris, *pro se*, filed a Notice of Appeal to the Supreme Court of Ohio on May 3, 2010, raising the same single assignment of error. (*Harris v. Clipper*, No. 1:14-CV-00846, ECF Doc. 7-22, 7-23).

---

[3] The court refers to "post conviction control" instead of "post release control," but the rest of the paragraph deals only with post release control, and no party has disputed that this was the court's intention.

[4] The period of mandatory PRC for a felony sex offense in Ohio is statutorily set at 5 years. O.R.C. § 2967.28(B)(1).

The Supreme Court of Ohio dismissed the appeal as not involving any substantial constitutional question on August 25, 2010. (*Id.* at ECF Doc. 7-24).

Thereafter, Harris filed a federal petition for a writ of habeas corpus under 28 U.S.C. § 2254 on April 18, 2014. (*Id.* at ECF Doc. 1). Harris raised the following grounds for relief : (1) actual innocence, (2) insufficient evidence, (3) equitable tolling, (4) ineffective appellate counsel for failing to notify him of the existence of post-conviction appeals, and (5) ineffective appellate counsel for failing to notify him of the procedure of post-conviction appeals. (*Id.* at ECF Doc. 21, pp. 5-6). After review, the Magistrate Judge recommended the dismissal of all grounds as time-barred, which the district court adopted over objection on March 14, 2017. (*Id.* at ECF Doc. 21, p. 16; ECF Doc. 28). The court declined to issue a certificate of appealability. (*Id.* at ECF Doc. 27, p. 3).

## C.     Subsequent Proceedings

On May 22, 2024, Harris filed *pro se* writs of mandamus and prohibition in Ohio's Ninth District Court of Appeals against his sentencing judge. (Index of Record on Appeal, *State ex rel. Harris v. Rothgery*, No. 2025-0612 (Ohio 2025), https://www.supremecourt.ohio.gov/Clerk/ecms/#/caseinfo/2025/612). Harris alleged that the original sentencing journal entries and the *nunc pro tunc* amendment were void because (1) the "up to a maximum of" language violated the relevant statute and rendered the original sentences void, (2) the December 1, 2009 *nunc pro tunc* was entered without vacating the original sentences or holding a hearing as required by statute, and (3) the sentencing judge lacked jurisdiction to enter a *nunc pro tunc* amendment after Harris had appealed. (Notice of appeal of Isaiah S. Harris, Sr. at p. 5, *State ex rel. Harris v. Rothgery*, No. 2025-0612 (Ohio 2025)). Harris asked the court to vacate the judgment and remand for resentencing. (*Id.*). The sentencing judge

6

moved to dismiss, which the Ninth District Court of Appeals granted *per curiam* on April 14, 2025. (Index of Record on Appeal, *State ex rel. Harris v. Rothgery*, No. 2025-0612 (Ohio 2025)).

Harris filed a Notice of Appeal, *pro se*, to the Ohio Supreme Court on May 2, 2025. (Notice of appeal of Isaiah S. Harris, Sr., *State ex rel. Harris v. Rothgery*, No. 2025-0612 (Ohio 2025)). Harris alleged that the Ninth District erred in ruling that (1) the sentencing judge could enter a *nunc pro tunc* order while an appeal is pending, (2) the original sentencing entry was voidable, not void, and (3) Harris had other adequate remedies at law. (Appellant's merit brief, *State ex rel. Harris v. Rothgery*, No. 2025-0612 (Ohio 2025)). In a *per curiam* decision, the Ohio Supreme Court affirmed the appellate court's decision on February 24, 2026. *State ex rel. Harris v. Rothgery*, 2026-Ohio-578 (2026).

### D.     The Instant Petition

On March 25, 2026, Harris filed the instant Petition under 28 U.S.C. § 2254, raising the following 18 grounds for relief:

> **Ground One:** IN VIOLATION OF OHIO. CONST. ART. I, §10; OHIO CONST. ART. I. §16; OHIO CONST. ART. 1, §18; OHIO CONST. ART. IV, §3(B)(2); USCS CONST. AMEND. 1; USCS CONST. AMEND. 5; USCS CONST. AMEND. 6; USCS CONST. AMEND. 14. To the detriment and to the prejudice of habeas petitioner the Trial Court, Defense-Appellate Counsel, and the Ninth District Court entered into a civil conspiracy to knowingly violate habeas petitioner's protected United States Constitutional Civil Rights. (1) By violating the Separation of Power Doctrine and (2) By contravening the Ohio State Final-Order Doctrine to deny habeas petitioner meaningful and effective appellate review of the trial record that contains undisputed U.S. Constitutional violations during his trial proceeding to obtain a guilty verdict in this case. In what amounts to a denial of due process and equal protection under federal law.
>
> **Supporting Facts:** The deeply rooted final-order requirement comes from the Ohio Constitution, which provides that courts of appeals shall have such jurisdiction as may be provided by law to review final orders rendered by inferior courts. ***Ohio Const. art. IV, § 3(B)(2)*** and ***O.R.C.2505.03***. Therefore, the Ninth District is legally bound to sua sponte dismiss any judgment that does not dispose of the entire case.

7

O.R.C. 2967.28(B)(1) establishes a mandatory term of five years of post-release control for felonies of the first degree. While this entry is intended to correct the May 20, 2009, original sentencing entry to reflect that the court imposed a five-year mandatory term of postrelease control, it failed to state the consequences should Harris violate the terms of postrelease control. The trial court is not legally permitted to amend the original entry during pending review, the nunc pro tunc entry is nonetheless still flawed, so the entire original sentencing entry is itself void pursuant to the law at the time. Because, the nunc pro tunc entry incorrectly states, "The defendant is ordered to serve as part of this sentence ***any term*** of post release control imposed by the Parole Board, and ***any prison term*** for violation of that post release control." Thus, the nunc pro tunc entry should be amended to incorporate the correct language of this rule and it clearly does not. See O.R.C. 2929.191(B)(1). O.R.C. 2929.191(C) dictates that a court cannot issue any correction until the court has conducted a hearing in accordance with this division. Before a court holds a hearing pursuant to this division, the court shall provide notice of the date, time, place, and purpose of the hearing to the offender who is the subject of the hearing, the prosecuting attorney of the county, and the department of rehabilitation and correction. The offender has the right to be physically present at the hearing, except that, upon the court's own motion or the motion of the offender or the prosecuting attorney, the court may permit the offender to appear at the hearing by video conferencing equipment if available and compatible. The essential principle underlying the policy of the division of powers of government into three departments is that powers properly belonging to one of the departments ought not to be directly and completely administered by either of the other departments, and further that none of them ought to possess directly or indirectly an overruling influence over the others.

**Ground Two:** IN VIOLATION OF OHIO. CONST. ART. I, §10; OHIO CONST. ART. I. §16; OHIO. CONST. ART. 1, §18; OHIO CONST. ART. IV, §3(B)(2); USCS CONST. AMEND. 1; USCS CONST. AMEND. 5; USCS CONST. AMEND. 6; USCS CONST. AMEND. 14. To the detriment and to the prejudice of habeas petitioner the appellate court's action in reviewing the constitutionality of Harris's conviction without a final-order from the trial court was an unconstitutional encroachment on the legislature's constitutional and inherent authority in violation of the separation-of-powers doctrine. In what amounts to a denial of due process and equal protection under federal law in an effort to secure a conviction gained from unconstitutional means.

**Supporting Facts:** The deeply rooted final-order requirement comes from the Ohio Constitution, which provides that courts of appeals shall have such jurisdiction as may be provided by law to review final orders rendered by inferior courts. ***Ohio Const. art. IV, § 3(B)(2)*** and ***O.R.C.2505.03.*** Therefore, the Ninth District is legally bound to sua sponte dismiss any judgment that does not dispose of the entire case.

**Ground Three:** IN VIOLATION OF OHIO. CONST. ART. I, §10; OHIO CONST. ART. I. §16; OHIO. CONST. ART. 1, §18; OHIO CONST. ART. IV, §3(B)(2); USCS CONST. AMEND. 1; USCS CONST. AMEND. 5; USCS CONST. AMEND. 6; USCS CONST. AMEND. 14. To the detriment and to the

8

prejudice of habeas petitioner the constitutionality of his State conviction was affirmed on appeal under direct review by a court lacking subject-matter jurisdiction as a matter of law was an unconstitutional encroachment on the legislature's constitutional and inherent authority in violation of the separation-of-powers doctrine. In what amounts to a denial of due process and equal protection under federal law.

**Supporting Facts:** In spite of the lower court's duty to dismiss Harris's appeal sua sponte for lack of having subject-matter jurisdiction in State v. Harris, 9th Dist. Lorain Nos. 09CA009605, 09CA009606, 09CA009607, 2010-Ohio-1081, (March 22, 2010) because Harris's entire sentence was considered void as a matter of law at the time, in spite of this fact, the court illegally said, "it was reasonable for the trial court to infer" Harris's guilt based on the testimony of a single witness.

**Ground Four:** IN VIOLATION OF OHIO. CONST. ART. I, §10; OHIO CONST. ART. I. §16; OHIO. CONST. ART. 1, §18; OHIO CONST. ART. IV, §3(B)(2); USCS CONST. AMEND. 1; USCS CONST. AMEND. 5; USCS CONST. AMEND. 6; USCS CONST. AMEND. 14. To the detriment and to the prejudice of habeas petitioner the constitutionality of his State conviction was affirmed on appeal under direct review by a court lacking subject-matter jurisdiction as a matter of law was an unconstitutional encroachment on the legislature's constitutional and inherent authority in violation of the separation-of-powers doctrine. In what amounts to a denial of due process and equal protection under federal law.

**Supporting Facts:** In bad faith, appellate counsel engineered a benign error to be reviewed by the lower court on appeal. See, Appendix E (Appellate Counsel's 2009 Direct Appeals Brief) filed by Paul Andrew Griffin #73561 on November 9, 2009, where counsel's error was based on "the victim in this case had a history of making false allegations against Mr. Harris," to be reviewed illegally by the Ninth District Court (lacking subject-matter jurisdiction) under a manifest weight/sufficiency of the evidence claim, while it is on record that this evidence pertaining to this fact, was in fact illegally suppressed during Harris trial proceedings.

**Ground Five:** IN VIOLATION OF OHIO. CONST. ART. I, §10; OHIO CONST. ART. I. §16; OHIO. CONST. ART. 1, §18; OHIO CONST. ART. IV, §3(B)(2); USCS CONST. AMEND. 1; USCS CONST. AMEND. 5; USCS CONST. AMEND. 6; USCS CONST. AMEND. 14. To the detriment and to the prejudice of habeas petitioner the constitutionality of his State conviction was affirmed on appeal under direct review by a court lacking subject-matter jurisdiction as a matter of law was an unconstitutional encroachment on the legislature's constitutional and inherent authority in violation of the separation-of-powers doctrine. In what amounts to a denial of due process and equal protection under federal law.

**Supporting Facts:** In spite of the lower court's duty to dismiss Harris's appeal sua sponte for lack of having subject-matter jurisdiction in State v. Harris, 9th Dist. Lorain Nos. 09CA009605, 09CA009606, 09CA009607, 2010-Ohio-1081, (March 22, 2010), while simultaneously presiding over cases State v. Harmon, 2009-Ohio-4512, at ¶4-9 (9th Dist. September 2, 2009), State v. Gonzalez, 2009-Ohio-5759, at ¶4-10 (9th Dist. November 2, 2009), and State v. Simone, 2010-Ohio-1824, at ¶5-

9

6 (9th Dist. April 28, 2010) which were similarly situated criminal defendants on appeal at the time who all received relief while Harris did not. To put it another way, from the very beginning Harris was not provided with all of the procedural protection mandated under State law in violation of his Federal equal protection and due process rights. Thus, this courts practice of law is discriminatory in nature.

**Ground Six:** IN VIOLATION OF OHIO. CONST. ART. I, §10; OHIO CONST. ART. I. §16; OHIO. CONST. ART. 1, §18; OHIO CONST. ART. IV, §3(B)(2); USCS CONST. AMEND. 1; USCS CONST. AMEND. 5; USCS CONST. AMEND. 6; USCS CONST. AMEND. 14. To the detriment and to the prejudice of habeas petitioner the appellate counsel was ineffective for overlooking obvious constitutional errors journalized within the trial record that would more likely than not undermined confidence in the outcome of petitioner's trial proceedings. In what amounts to a denial of due process and equal protection under federal law.

**Supporting Facts:** In bad faith, appellate counsel engineered a benign error to be reviewed by the lower court on appeal. See, Appendix E (Appellate Counsel's 2009 Direct Appeals Brief) filed by Paul Andrew Griffin #73561 on November 9, 2009, where counsel's error is based on '"the victim in this case had a history of making false allegations against Mr. Harris," to be reviewed illegally by the Ninth District Court (lacking subject-matter jurisdiction) under a manifest weight/sufficiency of the evidence claim, while it is on record that this evidence pertaining to this fact, was in fact illegally suppressed during Harris trial proceedings. Meaning, the error raised in bad faith by appellate counsel was ripe for post-conviction proceedings and not ripe for direct review of the Ninth District Appellate Court, irrespective of its jurisdiction being established.

**Ground Seven:** IN VIOLATION OF OHIO. CONST. ART. I, § 1 O; OHIO CONST. ART. I. § 16; OHIO. CONST. ART. 1, §18; OHIO CONST. ART. IV, §3(B)(2); USCS CONST. AMEND. 1; USCS CONST. AMEND. 5; USCS CONST. AMEND. 6; USCS CONST. AMEND. 14. To the detriment and to the prejudice of habeas petitioner the appellate counsel was ineffective for failure to bring petitioner aware of the following factors during the pending direct appeal: (1) the existence of the States post-conviction relief remedy pursuant to O.R.C. 2953.21, (2) that the filing of the trial record for direct appeal purposes is the triggering event to initiate the (then) 180-day statutory time limit to file a timely petition for State post-conviction relief: and (3) that the post-conviction relief remedy was the proper vehicle to raise constitutional question(s) that was dependent on material which existed outside the trial record. Appellate counsel's failures amounts to a denial of due process and equal protection under federal law.

**Supporting Facts:** In bad faith, appellate counsel engineered a benign error to be reviewed by the lower court on appeal. See, Appendix E (Appellate Counsel's 2009 Direct Appeals Brief) filed by Paul Andrew Griffin #73561 on November 9, 2009, where counsel's error is based on "the victim in this case had a history of making false allegations against Mr. Harris". Pursuant to former O.R.C. 2953.2l(A)(2) and Federal law State appellate counsel is legally obligated to inform Harris that he had until March 27, 2010 to file a timely post-conviction petition in aide of the

10

assignment of error raised by appellate counsel in his direct appeal, that was illegally affirmed on March 22, 2010, by a court clearly lacking subject-matter jurisdiction due to the final-order jurisdictional requirement provided by the Ohio Constitution.

**Ground Eight:** IN VIOLATION OF OHIO. CONST. ART. I, §10; OHIO CONST. ART. I. §16; OHIO. CONST. ART. 1, §18; OHIO CONST. ART. IV, §3(B)(2); USCS CONST. AMEND. 1; USCS CONST. AMEND. 5; USCS CONST. AMEND. 6; USCS CONST. AMEND. 14. To the detriment and to the prejudice of habeas petitioner the appellate counsel was ineffective for overlooking obvious constitutional errors journalized within the trial record that would more likely than not undermined confidence in the outcome of petitioner's trial proceedings. In what amounts to a denial of due process and equal protection under federal law.

**Supporting Facts:** Trial counsel J. Anthony Rich #66295, was denied by the trial court the opportunity to give an opening statement, laying the foundation for a meaningful and effective complete defense with Brady evidence. From this point of the record, it is undisputed that Harris was denied his 6th Amendment right-to-present-a-complete-defense by the trial court. After defense counsel made this proclamation in open court, the Lorain County Prosecutor did not properly object to the fact that Harris was denied his 6th Amendment right-to-defense by the trial court. Thus, these facts clearly establish judicial bias by the trial court in violation of federal law.

**Ground Nine:** IN VIOLATION OF OHIO. CONST. ART. I, §10; OHIO CONST. ART. I. §16; OHIO. CONST. ART. 1, §18; OHIO CONST. ART. IV, §3(B)(2); USCS CONST. AMEND. 1; USCS CONST. AMEND. 5; USCS CONST. AMEND. 6; USCS CONST. AMEND. 14. To the detriment and to the prejudice of habeas petitioner the appellate counsel was ineffective for overlooking obvious constitutional errors journalized within the trial record that would more likely than not undermined confidence in the outcome of petitioner's trial proceedings. In what amounts to a denial of due process and equal protection under federal law.

**Supporting Facts:** Trial counsel J. Anthony Rich #66295, explicitly alluded to his own ineffectiveness on the trial record. Trial counsel J. Anthony Rich #66295 did not obey his constitutional and statutory reciprocal discovery obligation during Harris's criminal trial proceedings. See Ohio Crim. R. 16, (A) purpose, scope, and reciprocity. Appellate counsel failed to raise this fundamental error supported by the record on appeal.

**Ground Ten:** IN VIOLATION OF OHIO. CONST. ART. I, §10; OHIO CONST. ART. I. §16; OHIO. CONST. ART. 1, §18; OHIO CONST. ART. IV, §3(B)(2); USCS CONST. AMEND. 1; USCS CONST. AMEND. 5; USCS CONST. AMEND. 6; USCS CONST. AMEND. 14. To the detriment and to the prejudice of habeas petitioner the appellate counsel was ineffective for overlooking obvious constitutional errors journalized within the trial record that would more likely than not undermined confidence in the outcome of petitioner's unconstitutional trial proceedings. In what amounts to a denial of due process and equal protection under federal law.

11

**Supporting Facts:** Lorain County Prosecutor Christopher James Pierre #75282 did not obey his constitutional and statutory Brady obligation during Harris's criminal trial proceedings. The prosecutor has not properly objected at the trial court level to the Brady issue on record. See, trial record where the State admits a public records request reveals Brady material and the State did not disclose the evidence to the defense in time for its effective use at trial. In this case, where here there is no physical evidence supporting the prosecution's case, and the truthfulness or lack of truthfulness of the complainant is a matter of crucial importance. Thus, these facts clearly establish prosecutor misconduct in violation of federal law. Appellate counsel failed to raise this fundamental error supported by the record on appeal.

**Ground Eleven:** IN VIOLATION OF OHIO. CONST. ART. I, §10; OHIO CONST. ART. I.§ 16; OHIO. CONST. ART. 1, §18; OHIO CONST. ART. IV, §3(B)(2); USCS CONST. AMEND. 1; USCS CONST. AMEND. 5; USCS CONST. AMEND. 6; USCS CONST. AMEND. 14. To the detriment and to the prejudice of habeas petitioner the appellate counsel was ineffective for overlooking obvious constitutional errors journalized within the trial record that would more likely than not undermined confidence in the outcome of petitioner's trial proceedings. In what amounts to a denial of due process and equal protection under federal law.

**Supporting Facts:** Journalized within the trial record is blatant violation of the 6th Amendment confrontation clause where complaining witness's credibility is always relevant, she admitted to lying to suit her purposes and alluding to previously filing false charges on Harris and being nearly criminally charged in Lorain County Courts for such conduct. Relevant statutory provisions that was not adhered to by the Lorain Police Department during the investigation phase of his criminal case. See, O.R.C. § 2935.032(A)(2)(C) Policies and procedures for responding to alleged domestic violence offense or violation of protection order, reads in relevant part: Separate the victim of the offense of domestic violence or the offense of violating a protection order and the alleged offender, conduct separate interviews with the victim and the alleged offender in separate locations, and take a written statement from the victim that indicates the frequency and severity of any prior incidents of physical abuse of the victim by the alleged offender, the number of times the victim has called peace officers for assistance, and the disposition of those calls, if known. As a result, because of the prosecutor's (Chris Pierre) and the Lorain Police Department's failure to acknowledge their respective Brady obligations in this case, the frequency and severity of any prior incidents of physical abuse between K.T. and Harris never became part of the trial record. Furthermore, the number of times K.T. has called the peace officers for assistance during their eight-year relationship as boyfriend & girlfriend, and the disposition of those calls, never became part of the trial record, and/or any relevant material evidence to be used as defense exhibits from such, per the court's docket sheet. Thus, these facts clearly establish judicial bias by the trial court in violation of federal law.

**Ground Twelve:** IN VIOLATION OF OHIO. CONST. ART. I, § 1 O; OHIO CONST. ART. I. § 16; OHIO. CONST. ART. 1, §18; OHIO CONST. ART. IV,

§3(B)(2); USCS CONST. AMEND. 1; USCS CONST. AMEND. 5; USCS CONST. AMEND. 6; USCS CONST. AMEND. 14. To the detriment and to the prejudice of habeas petitioner the appellate counsel was ineffective for overlooking obvious constitutional errors journalized within the trial record that would more likely than not undermined confidence in the outcome of petitioner's trial proceedings. In what amounts to a denial of due process and equal protection under federal law.

**Supporting Facts:** To the detriment and to the prejudice of habeas petitioner the trial court issued an improper and insufficient nunc pro tunc amended sentencing journal during petitioner's pending direct appeal without jurisdiction. Appellate Counsel failed to notify defendant of the implications of the nunc pro tunc amended sentencing journal pursuant to relevant case law at the time the amended entry was issued at the time during his appeal.

**Ground Thirteen:** IN VIOLATION OF OHIO. CONST. ART. I, §10; OHIO CONST. ART. I. §16; OHIO. CONST. ART. 1, §18; OHIO CONST. ART. IV, §3(B)(2); USCS CONST. AMEND. 1; USCS CONST. AMEND. 5; USCS CONST. AMEND. 6; USCS CONST. AMEND. 14. To the detriment and to the prejudice of habeas petitioner Lorain County Common Pleas Judge Christopher Robert Rothgery #40169 issued a nunc pro tunc amended sentencing journal pursuant to Crim. R. 36 rather than following binding procedures set forth in O.R.C. 2929.191 during Harris's pending appeal was an unconstitutional encroachment on the legislature's constitutional and inherent authority in violation of the separation-of-powers doctrine. In what amounts to a denial of due process and equal protection under federal law in an effort to secure a conviction gained from unconstitutional means.

**Supporting Facts:** In Ohio a court speaks only through its journal entries, not oral pronouncements. It is well known that a nunc pro tunc entry is void ab initio as the trial court no longer has jurisdiction to enter any judgment in a case once an appeal has been taken pursuant to O.R.C. 2505.04., because any action taken might affect issues on appeal.

**Ground Fourteen:** IN VIOLATION OF OHIO. CONST. ART. I, §10; OHIO CONST. ART. I. §16; OHIO. CONST. ART. 1, §18; OHIO CONST. ART. IV, §3(B)(2); USCS CONST. AMEND. 1; USCS CONST. AMEND. 5; USCS CONST. AMEND. 6; USCS CONST. AMEND. 14. To the detriment and to the prejudice of habeas petitioner Lorain County Common Pleas Judge Christopher Robert Rothgery #40169 issued a nunc pro tunc amended sentencing journal pursuant to Crim. R. 36 rather than following binding procedures set forth in O.R.C. 2929.191 during Harris's pending appeal was an unconstitutional encroachment on the legislature's constitutional and inherent authority in violation of the separation-of-powers doctrine. In what amounts to a denial of due process and equal protection under federal law in an effort to secure a conviction gained from unconstitutional means.

**Supporting Facts:** O.R.C. 2967.28(B)(l) establishes a mandatory term of five years of postrelease control for felonies of the first degree. While this entry was

intended to correct the May 20, 2009, original sentencing entry to reflect that the court imposed a five-year mandatory term of postrelease control, it failed to state the consequences should Harris violate the terms of postrelease control. The nunc pro tunc entry is nonetheless still flawed, so the entire original sentencing entry is itself void pursuant to the law at the time. Because, the nunc pro tunc entry incorrectly states, "The defendant is ordered to serve as part of this sentence ***any term*** of post release control imposed by the Parole Board, and ***any prison term*** for violation of that post release control." Thus, the nunc pro tunc entry should be amended to incorporate the correct language of this rule and it clearly does not. See O.R.C. 2929.191(B)(l).

**Ground Fifteen:** IN VIOLATION OF OHIO. CONST. ART. I, § 1 O; OHIO CONST. ART. I. § 16; OHIO. CONST. ART. 1, §18; OHIO CONST. ART. IV, §3(B)(2); USCS CONST. AMEND. 1; USCS CONST. AMEND. 5; USCS CONST. AMEND. 6; USCS CONST. AMEND. 14. To the detriment and to the prejudice of habeas petitioner Lorain County Common Pleas Judge Christopher Robert Rothgery #40169 issued a nunc pro tunc amended sentencing journal pursuant to Crim. R. 36 rather than following binding procedures set forth in O.R.C. 2929.191 during Harris's pending appeal was an unconstitutional encroachment on the legislature's constitutional and inherent authority in violation of the separation-of-powers doctrine. In what amounts to a denial of due process and equal protection under federal law in an effort to secure a conviction gained from unconstitutional means.

**Supporting Facts:** O.R.C. 2929.191(C) dictates that a court cannot issue any correction until the court has conducted a hearing in accordance with this division. Before a court holds a hearing pursuant to this division, the court shall provide notice of the date, time, place, and purpose of the hearing to the offender who is the subject of the hearing, the prosecuting attorney of the county, and the department of rehabilitation and correction. The offender has the right to be physically present at the hearing, except that, upon the court's own motion or the motion of the offender or the prosecuting attorney, the court may permit the offender to appear at the hearing by video conferencing equipment if available and compatible. The essential principle underlying the policy of the division of powers of government into three departments is that powers properly belonging to one of the departments ought not to be directly and completely administered by either of the other departments, and further that none of them ought to possess directly or indirectly an overruling influence over the others.

**Ground Sixteen:** IN VIOLATION OF OHIO. CONST. ART. I, §10; OHIO CONST. ART. I. §16; OHIO. CONST. ART. I, §18; OHIO CONST. ART. IV, §3(B)(2); USCS CONST. AMEND. 1; USCS CONST. AMEND. 5; USCS CONST. AMEND. 6; USCS CONST. AMEND. 14. To the detriment and to the prejudice of habeas petitioner Lorain County Common Pleas Judge Christopher Robert Rothgery #40169 issued a nunc pro tunc amended sentencing journal pursuant to Crim. R. 36 rather than following binding procedures set forth in O.R.C. 2929.191 during Harris's pending appeal was an unconstitutional encroachment on the legislature's constitutional and inherent authority in violation of the separation-

14

of-powers doctrine. In what amounts to a denial of due process and equal protection under federal law in an effort to secure a conviction gained from unconstitutional means.

**Supporting Facts:** Neither Harper nor Henderson addressed a scenario where a court corrects the erroneous imposition of postrelease control pursuant to O.R.C. 2929.191. That statute, effective July 11, 2006, provides a statutory remedy to correct a trial court's failure to properly impose postrelease control. Neither Harper nor Henderson state anything regarding the import of O.R.C. 2929.191. Notably, O.R.C. 2929.191 remains viable following Harper. The Ohio Supreme Court had referred to O.R.C. 2929.191 in State v. Bates, 2022-Ohio-475, 167 Ohio St. 3d 197, 190 N.E.3d 610, an opinion published after Harper. The essential principle underlying the policy of the division of powers of government into three departments is that powers properly belonging to one of the departments ought not to be directly and completely administered by either of the other departments, and further that none of them ought to possess directly or indirectly an overruling influence over the others.

**Ground Seventeen:** Actual Innocence. Petitioner proffers no newly discovered evidence of his innocence. But the Six Circuit has stated that "new evidence' need not be newly discovered evidence . . . but simply may be 'evidence that was not presented to the fact finder during trial, i.e., newly presented evidence." There are seven police reports that is being suppressed from the State's trial record. The suppression of this evidence amounts to a denial of due process and equal protection under federal law in an effort to secure a conviction gained from unconstitutional means.

**Supporting Facts:** "[T]he gateway actual-innocence standard is by no means equivalent to the standard which governs claims of insufficient evidence." It is more like than not that no reasonable juror would have convicted Harris in light of the newly presented evidence, because within the newly presented police reports there is evidence that tends to call into question the veracity of many key elements of the State's victim/witness' testimony during trial to support a guilty verdict. Also, it is a fundamental value of our democratic society that "it is far worse to convict an innocent [man] than to let a guilty [man] go free." Equally foundational is the federal judiciary's mandate that courts provide fair and impartial justice to all. In the present case, this paramount commitment requires addressing head-on how our judicial system failed a man improperly convicted of a crime. Where in this case the victim has a documented history of putting false charges on a man while maintaining a close relationship irrespective of (1) the degree of reprehensibility of allegation made by her; (2) the order of protection issued by the trial court; and (3) the degree of restriction placed on this man's freedom, even, if he is held in county jail without posting bond and/or being confined to a state prison after being sentence to 23 ½ years.

**Ground Eighteen:** Actual Innocence. Petitioner proffers no newly discovered evidence of his innocence. But the Six Circuit has stated that "new evidence' need not be newly discovered evidence . . . but simply may be 'evidence that was not

15

presented to the fact finder during trial, i.e., newly presented evidence." In what amounts to a denial of due process and equal protection under federal law in an effort to secure a conviction gained from unconstitutional means.

**Supporting Facts:** "[T]he gateway actual-innocence standard is 'by no means equivalent to the standard which governs claims of insufficient evidence." It is more like than not that no reasonable juror would have convicted Harris in light of the newly presented evidence, because within the newly presented police reports there is evidence that tends to call into question the veracity of many key elements of the State's victim/witness' testimony during trial to support a guilty verdict. For example, Harris was charged in count one of the indictment of Kidnapping O.R.C.2905.0l(A)(4), and found not guilty beyond a reasonable doubt by the fact finder after the witness testified on the record that she endured an 5-hour episode with Harris where she claimed during the event he forced her to perform oral sex on him. Thus, in light of this new evidence it is more likely than not that no reasonable juror would have convicted Harris of the remaining counts within the indictment as charge. In light of the fact, it is on the record she maintained a sexual relationship with Harris during and after he was charged of crimes stemming for her complaints against him. And it is proven that she continued to visit him in the Lorain County jail and has been coming to visit him in prison after Harris was convicted and sentenced to 23 ½ years of imprisonment. And after the State told Harris that he faced a potential maximum of 47 years of imprisonment then offered a three year plea deal in exchange for a guilty plea that he did not take.

(ECF Doc. 1, pp. 18-26) (cleaned up to remove brackets).

## IV.     Federal Habeas Corpus Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to Harris' petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). "As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). 28 U.S.C. § 2244, also amended by AEDPA, further restricts a petitioner's ability to file a habeas application via § 2254 if the petition is "secondary or successive." 28 U.S.C. § 2244(b).

Before a habeas petitioner may file a second or successive petition in the district court, they "shall move in the appropriate court of appeals for an order authorizing the district court to consider" it. 28 U.S.C. § 2244(b)(3)(A). This language makes clear that only the court of appeals

16

has jurisdiction to consider a "secondary or successive" habeas application and that a district court may not consider the issue without the appellate court's approval. *See Burton v. Stewart*, 549 U.S. 147, 157 (2007) (*per curiam*) ("Burton never sought nor received authorization […] before filing his [second or successive] petition, so the district court was without jurisdiction to entertain it."). In addition, "the court of appeals *may* authorize the filing of a second or successive application" only if a prima facie case is shown. 28 U.S.C. § 2244(b)(3)(C) (emphasis added).

AEDPA's circuit court authorization requirement demonstrates "'an allocation of subject matter jurisdiction to the court of appeals,' rather than the district court, over the initial processing of a second or successive habeas petition." *Alley v. Bell*, 392 F.3d 822, 828 (6th Cir. 2004), quoting *United States v. Barrett*, 178 F.3d 34, 41 (1st Cir. 1999) (collecting cases). Thus, a second or successive habeas petition erroneously filed in the district court without prior circuit court authorization presents a jurisdictional bar that prevents the district court from considering the case. *Burton*, 549 U.S. at 157.

AEDPA does not define "second or successive," however, and "it is well settled that the phrase [second or successive] does not simply 'refe[r] to all § 2254 applications filed second or successively in time[.]'" *Magwood v. Patterson*, 561 U.S. 320, 332 (2010), quoting *Panetti v. Quarterman*, 551 U.S. 930, 944 (2007). Indeed, as the Supreme Court has made clear, "not every numerically second petition is second or successive for purposes of AEDPA." *In re Bowen*, 436 F.3d at 704 (internal quotations and marks omitted) (collecting cases). If a second-in-time petition is not second or successive, then it is not required to meet the restrictions of 28 U.S.C. § 2244(b). *Id.* at 705-06. To determine whether it has jurisdiction, then, a district court's first step must be to determine whether the application is second or successive. *Id.* at 700; *see also in*

17

*re Nailor*, 487 F.3d 1018, 1021 (6th Cir. 2007) (indicating that the court must determine whether the petition is "second or successive" before it can examine whether the petition satisfies § 2254(b)).

The threshold determination for a second-in-time petition is to evaluate the underlying judgment and related claims. *In re Hill*, 81 F.4th 560, 569 (6th Cir. 2023) (explaining that a judgment is the legal mechanism authorizing a prisoner's confinement and the claim is the legal challenge to that judgment). A second-in-time petition bringing claims against a new, intervening judgment from the sentencing court is not second or successive. *Magwood*, 561 U.S. at 341-42 (2010) ("[W]here . . . there is a 'new judgment intervening between the two habeas petitions,' . . . an application challenging the resulting new judgment is not 'second or successive' at all.") (quoting *Burton v. Stewart*, 549 U.S. 147, 157 (2007)). "The sentence is the judgment," and a partial resentencing, as by a *nunc pro tunc* entry, may constitute a new intervening judgment if it imposes a "new, worse-than-before sentence[.]" *Crangle v. Kelly*, 838 F.3d 673, 678 (quoting *Burton v. Stewart*, 549 U.S. 147, 156 (2007).

If there has been no new intervening judgment, then a second-in-time habeas petition must bring claims that were either unripe or ruled unexhausted at the time of the first habeas petition. *In re Hill*, 81 F.4th at 569. Otherwise, the petition is second or successive. *Id.* In all, "when a second-in-time petition raises a new claim purporting to question the previously challenged judgment, the new claim was neither unripe nor unexhausted the first go-around, and the petitioner nevertheless failed to raise the claim, it is 'second or successive.'" *Id.*; *See also in re Coley*, 871 F.3d 455, 457-58 (6th Cir. 2017).

## V.      Discussion

18

Respondent has moved to transfer the present petition to the Sixth Circuit for review and determination pursuant to Section 2244(b)(3), arguing it is a second or successive petition and this Court is without jurisdiction to entertain it. (ECF Doc. 9, pp. 11-13). And neither party disputes that the Petition at bar is Harris' second-in-time habeas petition; Harris previously filed a federal habeas petition challenging his 2009 judgments of conviction in 2014. (*See* ECF Doc. 1, p. 27; Doc. 9, p. 9; *Harris v. Clipper*, 1:14-CV-00846). However, Harris argues that his Petition is not second or successive because the *nunc pro tunc* order in 2009 and the post-conviction litigation in 2024 constitute an intervening judgment. (ECF Doc. 1, p. 29; Doc. 10, p. 6 (citing *King v. Morgan*, 807 F.3d 154 (6th Cir. 2015))). For the reasons detailed below, I find that the instant Petition is second or successive and therefore recommend the District Court grant Respondent's motion to transfer.

Technically, a *nunc pro tunc* entry is a tool used by the sentencing court to correct clerical errors in the record. *See Crangle v. Kelly*, 838 F.3d 673, 680 (6th Cir. 2016) ("The phrase '*nunc pro tunc*' means 'now for then' and 'refers to situations in which the court's records do not accurately reflect its actions.'") (quoting *Kusay v. United States*, 62 F.3d 192, 193 (7th Cir. 1995)). However, the Sixth Circuit has recognized that, in some circumstances, a *nunc pro tunc* entry may substantively alter the sentence and therefore constitute a new judgment. *Id.* ("No matter the label, the November 2010 order changed the substance of his sentence—and thus amounted to a new judgment. A state court's decision to affix the label *nunc pro tunc* to an order does not control the federal questions whether the order changes his conditions of confinement.").

A particularly apposite case is *in re Stansell*, where the defendant Stansell pled guilty to several felonies in 1999 and was ordered to pay costs and serve 20 years to life in prison, but the

sentencing judge failed to impose the statutorily required PRC term. 828 F.3d 412, 414 (6th Cir. 2016). The sentencing journal also failed to reflect the order to pay costs. *Id.* at 420. Stansell subsequently filed a federal habeas petition, which was denied. *Id.* at 414. However, in 2013, after more state court appeals, the state appellate court partially vacated Stansell's sentence and remanded it for the imposition of a proper PRC term. *Id.* In 2014, the trial court imposed a five-year PRC term, and in 2015, the trial court amended the original sentencing journal *nunc pro tunc* to reflect the order to pay costs. *Id.* at 420. Stansell then filed a second federal habeas petition, which was transferred to the Sixth Circuit as second or successive. *Id.* at 413. The Sixth Circuit found that the resentencing which imposed PRC was an intervening judgment because it extended the time that Stansell's liberty would be restrained. *Id.* at 419. Therefore, the court ruled that Stansell's petition was not second or successive. *Id.* However, the court also noted that the 2015 *nunc pro tunc* entry was not an intervening judgment because the sentencing judge had imposed costs at the sentencing hearing, and therefore the *nunc pro tunc* was merely correcting an error in the record. *Id.* at 420 ("When courts use nunc pro tunc entries in this manner—to correct clerical errors that result in a discrepancy between the court's oral pronouncements and its paper records—we do not regard the corrected entries as new judgments for purposes of the second or successive requirements.").

Under *in re Stansell*, I find that the 2009 *nunc pro tunc* entry in the present case was neither intervening nor a new judgment. To start, both the partial resentencing and the *nunc pro tunc* entry in *in re Stansell* occurred between Stansell's two habeas petitions. *See id.* at 413, 420. Here, in contrast, Harris' *nunc pro tunc* was entered in 2009, years before the initial habeas petition was filed in 2014. (*See* ECF Doc. 1, p. 26-27). The *nunc pro tunc* entry was therefore not intervening. Additionally, I find that the *nunc pro tunc* entry was not a new judgment as

20

contemplated by *in re Stansell*, because a review of the state trial transcript demonstrates that the trial judge imposed a five-year term of PRC at Harris' sentencing hearing. (*Harris v. Clipper*, No. 1:14-CV-00846, ECF Doc. 7, p. 274). The *nunc pro tunc* entry was therefore "correct[ing] clerical errors that result in a discrepancy between the court's oral pronouncements and its paper records[,]" not substantively altering the judgment. *In re Stansell*, 828 F.3d at 420. Thus, the *nunc pro tunc* entry was not a new intervening judgment.

Additionally, neither Harris' 2024 writs of mandamus and prohibition nor any of the subsequent litigation constitute a new intervening judgment because they do not substantively alter the sentence pursuant to which Harris is held in custody, much less impose a "new, worse-than-before sentence[.]" *See Crangle*, 838 F.3d at 678.[5] The Supreme Court of Ohio's 2026 decision affirming the dismissal of Harris' writs of mandamus and prohibition did not change the terms of Harris' incarceration or PRC; Harris is still incarcerated on the same terms as he was sentenced to in 2009, and upon his release, he will be subject to PRC on the same terms he was sentenced to in 2009. Therefore, because neither the *nunc pro tunc* entry nor the denial of Harris' writs have altered the terms of Harris' sentence since his previous federal habeas petition, I find that the instant petition pertains to the same judgment as the 2014 petition.

I therefore turn to whether Harris is bringing claims which were unripe or unexhausted at his initial habeas petition. *See in re Hill*, 81 F.4th 560, 569 (6th Cir. 2023). Harris raises four claims alleging issues at his trial, seven claims alleging issues during his direct appeal, and seven claims alleging issues with the 2009 *nunc pro tunc* entry. (*See* ECF Doc. 1, pp. 18-26). However,

---

[5] Harris cites an unpublished Southern District of Ohio case for the proposition that the *Crangle* test does not include a "worse-than-before" requirement. (ECF Doc. 1 at 29) (citing *Brown v. Harris*, No. 3:17-CV-080, 2018 WL 1629103 (S.D. Ohio April 5, 2018), *report and recommendation adopted*, No. 3:17-CV-080, 2018 WL 2077594 (S.D. Ohio May 4, 2018)). However, the Sixth Circuit has consistently recognized the "worse-than-before" requirement when applying *Crangle*. *See, e.g., Cortez v. Warden Chillicothe Corr. Inst.*, No. 17-3530, 2018 WL 2382456 at *2 (6th Cir. Feb. 16, 2018).

because these errors would have occurred before his 2014 habeas petition was filed, all eighteen claims were ripe at that time. *See in re Tibbetts*, 869 F.3d 403, 406 (6th Cir. 2017) ("A claim is unripe when 'the events giving rise to the claim had not yet occurred.'") (quoting *in re Jones*, 652 F.3d 603, 605-06 (6th Cir. 2010)). Likewise, Harris raises four claims in the instant petition that he previously raised in his 2014 petition, and those claims were dismissed as untimely, not unexhausted. (*Harris v. Clipper*, No. 1:14-CV-00846, ECF Doc. 27, p. 2). Therefore, I find that Harris' claims were neither unripe nor unexhausted at the time of his 2014 habeas petition, and therefore his Petition is second or successive. Thus, I recommend that Respondent's motion to transfer be granted.

## VIII.   Other Motions

Because I recommend transferring this petition to the Sixth Circuit as second or successive, this Court is without jurisdiction to consider Petitioner's motions to expand the record (ECF Doc. 8) and take judicial notice (ECF Doc. 7). *See Franklin v. Jenkins*, 839 F.3d 465 (6th Cir. 2016); *Burton v. Stewart*, 549 U.S. 147 (2007).

## IX.   Recommendation

For the above stated reasons, I recommend that the District Court grant Respondent's motion to transfer Harris' Petition for a writ of habeas corpus to the Sixth Circuit.

Dated: August 6, 2026

Reuben J. Sheperd
United States Magistrate Judge

## OBJECTIONS

### Objections, Review, and Appeal

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge.  Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C.§ 636(b)(1); Local Rule 72.3(b).  Properly asserted objections shall be reviewed de novo by the assigned district judge.

\* \* \*

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation.  *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019).  Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).  Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, \*2 (W.D. Ky. June 15, 2018) (quoting *Howard*).  The failure to assert specific objections may in rare cases be excused in the interest of justice.  *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).